UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK ALLAN CELENTANO, | ) |
| HMA MGU, LLC, NEW ENGLAND | ) |
| CUSTOM HEALTH PLAN | ) |
| ADMINISTRATORS, LLC, AND | ) |
| JEDEDIAH L. BRETTSCHNEIDER, | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) C.A. NO: 1:09-CV-11112DPW |
| | ) |
| NONNIE BURNES, In her official capacity as | ) |
| COMMISSIONER OF THE MASSACHUSETTS | ) |
| DIVISION OF INSURANCE, | ) |
|     Defendant. | ) |

## PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS

### I.   PRELIMINARY STATEMENT

In a nutshell, the Division of Insurance (Division) seeks, among other things, to revoke

Plaintiffs' insurance licenses and impose maximum statutory fines based solely on Plaintiffs'

purported "inducement" of a violation of the non-discrimination provisions of the Employee

Retirement Income Security Act of 1974 (ERISA), as amended by the Health Insurance

Portability and Accountability Act (HIPAA).  While the Division suggests that its proceeding

merely bears on insurance licensing issues, there is no conceivable licensing issue or any

legitimate state interest without proof of the alleged ERISA violation.  The Division has no

licensing authority or legitimate interest in regulating lawful and non-misleading speech by the

Plaintiffs and a licensee cannot be punished for inducing allegedly unlawful conduct unless that

conduct is, in fact, unlawful.  Thus, the necessary predicate of any enforcement action against

Plaintiffs is proof of an alleged violation of ERISA by an ERISA plan sponsor.  The conduct or

"evil" that the Division seeks to reach in the Show Cause Order is in fact not Plaintiffs' alleged

conduct at all, but the conduct of the self-funded ERISA plan in allegedly purchasing an

individual policy for an employee rather than including that employee in the plan's self-funded pool. The Division's attempt to prohibit this conduct by establishing the unlawfulness of the *plan's* conduct by way of "inducement" or "aiding and abetting"-type claims against third party advisors and service providers is a transparent attempt to avoid ERISA preemption and accomplish the same regulatory goal by other means. This the Division cannot do.

In addition, prior to the Division's issuance of the Show Cause Order, the United States Department of Labor (DOL), the agency with sole authority to interpret and enforce the ERISA issues in this case, opened an investigation of precisely the same conduct that is the subject of the Show Cause Order. Plaintiffs are cooperating with that investigation, which is ongoing, and DOL has not to date asserted any wrongdoing by Plaintiffs. The Division's conduct in issuing the Show Cause Order, at a time when the DOL had already opened an investigation of the matter, presents Plaintiffs with the risk of inconsistent adjudications, not to mention the burden of responding to two regulatory authorities when only one has the jurisdiction to address the ERISA issues. Because the Division is acting beyond the lawful limits of its authority in a facially apparent violation of ERISA's broad preemption provisions, Plaintiffs filed the present action seeking to enjoin the Division from proceeding in the pending Show Cause matter to the extent that it relates to the conduct of ERISA Plans.[1]

In its papers, the Division does not dispute that the federal court has subject matter jurisdiction over the parties' dispute. Nor can the Division dispute that:

- Self-funded employee benefit plans are governed by ERISA;

- ERISA precludes state regulation -- including by the Division -- of an employee benefit plan;

---

[1]      Plaintiffs' incorporate by reference their Motion for Preliminary Injunction, accompanying memorandum of law and the affidavit of Nancy D. Adams filed on June 30, 2009.

- HIPAA's non-discriminatory provisions are amendments to ERISA and to the extent that they relate to private health plans apply only to ERISA plans;

- HIPAA is thus subject to ERISA's broad pre-emption provisions;

- The state lacks any authority to enforce HIPAA's non-discrimination rules;

- The United States Department of Labor (DOL) is solely permitted to regulate conduct or take enforcement action involving the establishment or operation of an employee benefit plan; and

- The DOL is conducting an investigation into the very allegations asserted by the Division, an investigation that began before the Division filed its Show Cause Order.

Rather, the Division asserts that ERISA preemption is simply an affirmative defense more appropriately resolved before a state administrative hearing officer and thus, seeks dismissal of this action on abstention grounds. *See Younger v. Harris,* 401 U.S. 37, 45-47 (1971). However, as the First Circuit explained in *Chaulk Serv. Inc. v. Mass. Comm'n Against Discrimination*, 70 F.3d 1361 (1st Cir. 1995), comity works both ways and "must accommodate the legitimate interests of *both* the state and national governments." *Id. at* 1369. As such,

> [w]here Congress, acting within its constitutional authority, has vested a federal agency with exclusive jurisdiction over a subject matter and the intrusion of a state would result in a conflict of functions, the federal court may enjoin the state proceedings in order to preserve the federal right.

*Id.* This "conflict of functions" is clearly present here, where the United States Department of Labor (DOL) -- the undisputed, sole authority to adjudicate the alleged ERISA violation upon which the Show Cause Order rests-- is conducting an investigation into the very factual allegations giving rise to the state proceeding; an investigation which commenced before the Division's filing of the Show Cause Order. This is not a case where a federal court should stay its hand in deference to a legitimate state interest. To the contrary, it is a case in which the federal court should use its equitable powers to defend the clear federal interest against state

interference with an ongoing federal investigation, by the only agency of government with authority to do so, involving the same facts.

Contrary to the Division's repeated references to the "mandatory" nature of *Younger* abstention, *Younger* involves the abdication by a federal court of its constitutionally-imposed duty to resolve cases and controversies properly before it.  It is thus the exception, not the rule and should be invoked only in the narrowest of circumstances. To trigger the extraordinary relief of *Younger*, the Division must show that (1) a vital state interest is implicated; (2) there is an ongoing state proceeding; and (3) the plaintiff has an adequate opportunity to litigate the defense in the state proceeding.  The Division cannot satisfy any of these requirements.  Moreover, even assuming the Division could satisfy these requirements, it is "facially conclusive" that the Show Cause Order is preempted by ERISA, and thus *Younger* does not apply.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The June 2009 Show Cause Order

On June 4, 2009, the Division filed the Show Cause Order against Plaintiffs alleging, *inter alia*, that Plaintiffs caused and/or advised employer, KC Precision Machining, Inc. ("KC Precision"), to violate HIPAA's non-discrimination provisions, 29 U.S.C. § 1182, by providing a Plan's promised employee health benefits to certain employees by purchasing, on the employees' behalf, individual health insurance policies.[2/]  The Division further alleges that, because

---

[2/]     Although not directly relevant for Rule 12(b)(6) purposes, Plaintiffs deny the factual allegations that it is advising or requiring customers to purchase individual health insurance policies for particular employees. It is not in Plaintiffs' financial interest to "induce" an employer to implement its plan in the manner alleged by the Division. HMA Administrators, LLC, which administers self-funded ERISA Plans and processes and pays claims, is compensated monthly based on the number of employees that it services in a plan; a reduction in those numbers results in a corresponding direct reduction in fees from that employer.  But Plaintiffs also reject the argument that such conduct by an employer violates ERISA.  ERISA bars employers from determining eligibility to participate in employee benefit plans based on certain enumerated factors, and prohibits an ERISA Plan from treating employees differently in terms of the benefits promised to the employees, or the costs in terms of premiums and co-pays charged to employees, based on those enumerated factors.  29 U.S.C. § 1182.  HIPAA's non-discrimination rules are intended to protect employees, not health insurers.  They deal with the benefits provided to employees and the costs

Plaintiffs "induced" these supposed  "HIPAA violations," Plaintiffs violated Mass. Gen. Laws ch. 175, § 162R(a)(8) and Mass. Gen. Laws ch. 176D, § 2.[3/]  As relief, the Division is seeking corporate capital punishment; namely, the revocation of all licenses to the Plaintiffs, the assessment of the maximum fine permitted under state law, and an order that the Plaintiffs cease and desist from all conduct which, if taken literally, means that the Division seeks to bar the Plaintiffs from conducting business in the Commonwealth.

Because the Division's actions are preempted by ERISA, on June 30, 2009, Plaintiffs filed this action seeking (1) a declaration that the claims and relief sought in connection with Counts 26 through 33 of the Show Cause Order violate the preemption provisions of ERISA; and (2) an Order preliminarily and permanently enjoining the Division from any investigation, prosecution or adjudication of the claims and issues raised in Counts 26 through 33 of the Show Cause Order.  The Division seeks dismissal of this action on *Younger* abstention grounds.

B.        **The April 2009 DOL Investigation**

Since at least April 30, 2009, the DOL has been investigating precisely the same factual situation upon which the Show Cause Order is based, i.e., Plaintiffs relationship with K.C. Precision.  In particular, by letter dated April 30, 2009, the DOL explained that it has

---

to the employees for those benefits. ERISA has nothing to do with how those benefits are funded or provided by  the Plan, i.e., whether self-funded or through the purchase of insurance.  So long as employees have access to all of the benefits promised in the Plan, and all employees are treated equally in terms of the cost of those benefits, HIPAA is a non-issue.  The Division's interpretation of the ERISA amendments contained in HIPAA as, in effect, barring a Plan from having both insured and self-funded components is not supported by the language of the ERISA statute or any regulation or caselaw.  The Division's attempt to establish this principle by stretching HIPAA far beyond its intent, in order to effectuate some policy interest of the Commonwealth of Massachusetts in protecting private insurers who participate in its health reform efforts, is precisely the type of state regulation of ERISA Plans that is expressly preempted by federal law.  There is no allegation in the Show Cause Order that any employer-customer of Plaintiffs barred any employee from receiving health benefits promised in the Plan.  Nor is their any allegation that any employee of one of the Plaintiffs' customers suffered as a result of being offered fewer or different health benefits, or incurred greater costs or co-pays than those promised to employees generally under the Plan.  While the Division disapproves of the manner in which the employer provided the promised benefits, on its face the employer's alleged conduct violates neither  ERISA nor HIPAA.  If the Commonwealth sees a need to regulate in this area then it must find a different legal avenue within the state's jurisdiction.

responsibility for the administration and enforcement of Title I of ERISA -- which establishes the standards governing the operation of employee benefit plans.[4/]  The DOL further explained that "HMA Direct Benefit Consulting Group has been selected for review" and, accordingly, requested certain documents, site visits and interviews.  *Adams Aff.*, at Ex. A.   With respect to its document request, the DOL specifically sought documents, including all contracts and schedules of employee and employer contributions, relating to KC Precision.  *Id.*

As the Complaint alleges, Plaintiffs are fully cooperating with the DOL and have voluntarily provided information and produced employees and independent contractors for interviews.[5/]  *Complaint* at ¶ 24.  The DOL's investigation is comprehensive and, upon information and belief, includes interviewing present and former clients and employees of Plaintiffs, the issuance of subpoenas, and also various brokers involved in the marketing and sale of self-funded employee benefit plans.  *Id.*  To date, the DOL has not asserted any claim of regulatory violations or other wrongdoing by Plaintiffs under ERISA.  *Id.*

## III.   THE RELATIONSHIP BETWEEN ERISA AND HIPAA

### A.   ERISA's Statutory Scheme

ERISA is comprised of four titles.  Relevant here is Title I -- often referred to as the "Labor Title" -- which governs employee benefit plans.  Title I defines the term "employee

---

[3/]      The specific factual allegations that supposedly support the Division's claims can be found at Paragraphs 34 to 46 of the Show Cause Order.

[4/]      The Court may "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment."  *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000).  *See also Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to-and admittedly dependent upon-a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).")

[5/]      The Division does not dispute that Plaintiffs are cooperating with the DOL.  In fact, in a remarkable omission given the comity issues underlying *Younger* abstention, the Division makes no reference whatsoever to the ongoing DOL investigation.  Regardless, in evaluating a Rule 12(b)(6) motion, the Complaint is construed in the light most favorable to the Plaintiffs and all allegations therein are considered to be true.  *Nollett v. Justices*,  83 F. Supp. 2d 204, 208 (2000).

benefit plan" to "encompass an employee welfare benefit plan or an employee pension benefit plan or a plan which is both."[6/]  29 U.S.C. § 1002(3).  If a benefit plan maintained by a private employer subject to United States law provides medical, surgical, or hospital care or benefits, it is subject to Title I and it is an "ERISA Plan."[7/]  29 U.S.C. § 1003 (West 2009).

**B**.      **ERISA's Broad Pre-emption Provisions**

In order to achieve the desired uniformity, only federal regulatory authorities, primarily the DOL, are permitted to regulate the conduct and/or take enforcement action against an employee benefit plan sponsor.  *See* 29 U.S.C. § 1132 (West 2009).  This administrative scheme was designed to avoid the danger of conflicting or incompatible adjudications such as would inevitably result from having forums, with their diverse procedures, entertain claims under ERISA.  *See Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776,* 346 U.S. 485, 490-91 (1953); *Chaulk*, 70 F.3d at 1364.  ERISA preempts state law causes of action "insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a) (West 2009).  Thus, ERISA's broad preemption provisions prohibit the regulation -- directly or indirectly -- of employee benefit plans by state insurance regulators.  *See Metro. Life Ins. Co. v. Mass.,* 471 U.S. 724 (1985); *Shaw v. Delta Air Lines, Inc.*, 436 U.S. 85 (1983).

**C.**      **The 1996 Amendments to ERISA**

In 1996, Congress enacted HIPAA.[8/]  Among other things, HIPAA created a new Part 7 (Group Health Plan Requirements) to Title I.[9/]  HIPAA expressly states that "nothing in this [Part

---

[6/]      The present dispute does not relate to pension benefits and thus, Plaintiffs focus solely on welfare benefits.

[7/]      There are five exceptions; none of which is applicable here: (i) governmental plan; (ii) church plans; (iii) plans maintained solely for the purpose of complying with worker's compensation laws; (iv) plans maintained outside of the United States primarily for the benefit of persons substantially all of whom are nonresident aliens; or (v) excess benefit plans.  *See* 29 U.S.C. § 1003 (West 2009).

[8/]      HIPAA amended ERISA, the Internal Revenue Code and the Public Health Services Act.

[9/]      Prior to HIPAA, ERISA was only comprised of six parts: (1) Reporting and Disclosure; (2) Participation and Vesting; (3) Funding; (4) Fiduciary Responsibility; (5) Administration and Enforcement; and (6) Group Health Plans.

7] shall be construed to affect or modify the provisions of section 514 [29 U.S.C. § 1144] with

respect to group health plans." 29 U.S.C. § 1191(a)(2). As amended, Part 7 establishes certain

requirements relating to portability, access and renewability of "group health plans." The term

"group health plan" is defined to include a "welfare benefit plan". 29 U.S.C. § 1191 (West

2009).

In the Show Cause Order, the Division asserts that the Plaintiffs' violated -- or caused the

plan sponsors to violate -- Part 7, ERISA § 702 (the parallel citation is 29 U.S.C. § 1182) which

provides, among other things, that "group health plans" cannot establish eligibility rules or

charge higher premiums to an individual based on that individual's health status. 29 U.S.C. §

1182 (West 2009); *Show Cause Order*, at ¶45. It is this provision upon which the Show Cause

Order is predicated.

**IV.    BECAUSE *YOUNGER* IS INAPPLICABLE, THE DIVISION'S MOTION TO DISMISS SHOULD BE DENIED                                                                                          .**

"[T]he federal court's obligation to adjudicate claims within their jurisdiction is 'virtually

unflagging'". *New Orleans Public Serv., Inc. (NOPSI) v. Counsel of the City of New Orleans*,

491 U.S. 350, 359 (1989) (quoting *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988)). Indeed,

for nearly 200 years*,* the Supreme Court has made clear that federal courts generally lack the

authority to abstain from the exercise of jurisdiction where conferred. *See NOPSI*, 491 U.S. at

359 ("our cases have long supported the proposition that federal courts lack the authority to

abstain from the exercise of jurisdiction that has been conferred"); *Cohens v. Virginia*, 6 Wheat

264, 404 (1821) ("we have no more right to decline the exercise of jurisdiction which is given,

then to usurp that which is not given"). The federal courts have thus carefully and narrowly

defined those areas where abstention is permissible, and it remains an extraordinary and narrow

exception of the duty of the federal court to adjudicate a controversy. *NOPSI,* 491 U.S. at 359;

*Chaulk,* 70 F.3d at 1368; *Philip Morris Inc. v. Harshbarger*, 946 F. Supp. 1067, 1078 (D. Mass. 1996).

Notwithstanding this Court's undisputed jurisdiction to resolve the parties' dispute, the Division requests that this Court abstain pursuant to *Younger*, 401 U.S. at 45-47.   Under *Younger*, abstention is appropriate "where (1) vital state interests are involved; (2) in an ongoing state judicial (or administrative) proceeding, a federal court should abstain from exercising its jurisdiction over a claim; (3) unless state law clearly bars the imposition of the constitutional claims." *Chaulk*, 70 F.3d. at 1368.  *See also Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 627 (1986).  The Show Cause proceeding at issue here does not fall within the *Younger* principles for four reasons.  First, the procedural posture of this case is different from cases where *Younger* is traditionally applied because the federal investigation pre-dates the Division's Show Cause Order.  Second, the Show Cause proceeding does not implicate a legitimate state interest, much less a "vital" state interest.  Third, Plaintiffs will not have an adequate forum to raise the preemption issue because the ultimate adjudicator in the administrative process, the Commissioner of the Division of Insurance, has already determined by authorizing the issuance of the Show Cause Order and the commencement of state proceedings that preemption is *not* applicable.  Fourth, even if the *Younger* factors could be established, it is "facially conclusive" that the Show Cause proceeding is preempted by ERISA, an exception to *Younger* recognized by the First Circuit.

> **1.      The DOL Commenced its Investigation Prior to the Division Commencing the Show Cause Proceedings.**

"Ordinarily, federal courts abstain from the exercise of jurisdiction over a particular controversy out of respect for an ongoing state proceeding begun before the federal action." *Chaulk*, 70 F.3d at 1368.  Here, the DOL investigation pre-dates the Division's filing of its Show

Cause Order.  *See Adams Aff*., at Ex. A.   As the interests of comity must accommodate the legitimate interests of both the state and federal government, the state proceeding should be enjoined in favor of the on-going DOL investigation.  To hold otherwise, would subject Plaintiffs to the prospect of defending against the same claims in two forums, namely the Show Cause proceeding and the DOL investigation, and being subject to inconsistent adjudications.  When the claimed state interest conflicts with the federal governments assertion of its regulatory interests in an investigation that commenced before the state proceedings, Younger abstention should not be applied.  As the First Circuit noted in *Chaulk*, "such an expansive interpretation of the abstention doctrine would have the effect of encouraging duplicative litigation, with the resultant waste of judicial and administrative resources, as well as the danger to federal-state relations that could result from conflicting adjudications."  *Chaulk*, 70 F.3d at 1369.

The Division conveniently ignores the fact that the DOL commenced an investigation into the very conduct that forms the basis of the state regulatory proceeding.  The Division likewise ignores the fact that the DOL's investigation is fatal to *Younger* abstention.  Comity works both ways and it would be inconsistent with principles of comity to abstain on *Younger* grounds from deciding the parties' dispute -- which is properly before this Court -- in favor of a state regulatory proceeding filed *after* the DOL commenced its own investigation.[10/]

**2.      There is No Vital State Interest at Issue in the Show Cause Proceeding.**

The Division has no authority to regulate, interpret or enforce ERISA.  Despite this fact, the Division seeks to revoke Plaintiffs' insurance licenses and assess statutory maximum fines solely based on Plaintiffs' alleged involvement in ERISA violations by Plan sponsors.  While the

---

[10/]     In addition, the Division is essentially using the Show Cause proceeding as a means to avoid the administrative rule-making requirements under state law.  Accordingly, the Show Cause proceeding is arguably more of a legislative or executive action than a judicial proceeding.  *See NOPSI,* 491 U.S. at 368.

Division has artfully characterized its claims as ones involving the purported incompetence or untrustworthiness of insurance producers, the Division's claims are predicated on ERISA. *See Chaulk*, F.3d at 1367 ("no recharacterization of this claim can obscure the fact that, at bottom, this is a classic example of an unfair labor practice claim of the kind traditionally handled in the first instance by the NLRB").   Indeed, absent proof of the ERISA violation, there is no claim and no licensing issue.[11/]

The Division's Show Cause Order is based on the allegation that that the conduct of KC Precision -- a self-funded plan sponsor that allegedly decided to provide for and fund a particular employee's promised health benefits by purchasing an individual health insurance policy -- violated the non-discrimination provisions of ERISA.  The Division then asserts that because Plaintiffs purportedly "induced," "advised," or "required" the employer to violate ERISA by such conduct, Plaintiffs committed unfair and deceptive insurance practices in violation of Mass. Gen. Laws. ch. 175, § 162R(a)(8) and Mass. Gen. Laws ch. 176D, §2.  To prevail on this theory, the Division's Hearing Officer necessarily will be required to find that the actions of  KC Precision, an ERISA plan sponsor violated Part 7 of ERISA.

The Division supports its claim to a legitimate state interest by essentially stating the rationale for insurance regulation.  The "vital state interest" referred to in the *Younger* prong, however, cannot mean that the state agency can simply point to its mission statement.  Such an interpretation would deprive the state interest prong of any meaning.  Although the state interest does not need to be tied directly to the result in the particular case, it must at least be related generally to the subject of the particular proceeding.  Here, the state lacks any substantial, legitimate interest in regulating the conduct of employee benefit health plans governed by

---

[11/]       Moreover, to the extent that Plaintiffs' conduct was lawful, the state has no interest in regulating Plaintiffs' commercial speech with respect to otherwise lawful conduct.

ERISA.  The state also lacks any substantial, legitimate interest in the interpretation or

enforcement of the non-discrimination provisions of ERISA.[12/]  *Cf. NOPSI*, 491 U.S. at 366 (the

state had a substantial, legitimate interest in regulating intrastate utility retail rates).   The state

cannot claim any interest in these matters because they are a creature of a federal statute that

expressly precludes state involvement in the regulation of conduct covered by the statute.

The Division's argument that insurance licensing is a vital state interest is, in other

words, circular.  To establish any licensing issue in which it could claim a legitimate interest, the

Division must prove that there were ERISA violations in which Plaintiffs are directly involved.

It is only upon such an adjudication that the Division's "interest" in insurance licensing is

implicated.  In the absence of the ERISA violation, the Division's claim would simply be an

attempt to punish Plaintiffs for lawful commercial free speech, something that cannot be

considered a "vital state interest" for *Younger* purposes.  Simply put, while the state may have an

interest generally in the trustworthiness and competence of those that it regulates, those interests

are simply not implicated in this action in which the Division is actually seeking, illegitimately,

to establish its favored interpretation of ERISA with respect to the actions of employee health

plan sponsors in the Commonwealth of Massachusetts.  The Show Cause Order does not serve

any legitimate, much less "vital," state interest.

    **3.**      **Plaintiffs Lack an Adequate Forum to Assert its Preemption Defense.**

With respect to the administrative proceedings at issue in this case, the Division acts as

judge, jury, and appeals court.  As the Division notes, Plaintiffs' preemption defense will be

---

[12/]      The legal authority upon which the Division relies to establish a vital state interest are inopposite.  *See, e.g., Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 475 U.S. 423, 434 (1982) (the state has an interest in licensing its attorneys).  None of the cases relied upon by the Division provides that the state has an interest in the regulation, interpretation, or enforcement of ERISA.

decided in the first instance by the Division-employed hearing officer.  801 Code Mass. Regs. §

1.01.  After a hearing, that officer will issue a decision that Plaintiffs' may then "appeal" the

decision to the head of the Division, i.e., the nominal Defendant in this case, the Commissioner

of Insurance.  *Id*.  Plaintiff's may seek further review  in the Superior Court, where the scope of

review as to factual issues is limited.  This raises serious due process concerns.

While the Division promises to examine Plaintiffs' defenses with the closest scrutiny, the

Division is fundamentally opposed to self-funded health plans.  Indeed, as Plaintiffs' alleged in

their Complaint, the Division has issued an alarmist consumer alert warning Massachusetts

residents and employers to avoid any such plans.  Moreover, when Plaintiffs attempted to resolve

this dispute, the Division demanded, among other things, that Defendants agree not to "market or

sell any self-funded health plan, including any self-funded health plan involving stop loss

insurance."[13/]  These facts, combined with stated policy of the Division, i.e., that self-funded

health plans should not be used in Massachusetts, demonstrate that the Division is not a fair,

impartial and adequate forum to adjudicate the preemption issue.  In such circumstances,

abstention is not warranted. *See Gibson v. L. M. Berryhill*, 411 U.S. 564, 577 (1973) (if bias is

demonstrated on the part of the administrative tribunal, *Younger* abstention in inappropriate).

       4**.**        **It is "Facially Conclusive" that the Division's Claims are Preempted**

           A.        **It is "Facially Conclusive" that the Show Cause Order is Preempted by ERISA.**

ERISA employee benefit health plans, including the self-funded variety marketed by

Plaintiffs, are not subject to state insurance laws and are beyond the Division's regulatory

---

[13/]      A copy of the Division's demands is attached at Exhibit C the Affidavit of Nancy D. Adams filed in support of the Plaintiffs' Motion for Preliminary Injunction.  For the Court's convenience, a copy of the demands is also attached to the Adams Aff. filed in support of the present opposition at Exhibit B.   These demands plainly demonstrate the Division's attempt to regulate employee benefit health plans.

jurisdiction. As such, the Division has no authority to determine what a self-funded plan sponsor may (or may not) do with respect to the implementation of an employee benefit health plan and may not regulate those plans either directly *or indirectly*. *See Metro. Life Ins. Co.* 471 U.S. at 745. Moreover, the Division lacks authority to interpret and/or enforce ERISA against health plan sponsors, particularly as it relates to self-funded employee benefit health plans. *See* 29 U.S.C. § 1191(a)-(c) (West 2009). The necessary predicate of the Division's Show Cause Order (and what it is seeking to accomplish by these proceedings)is an adjudication that certain conduct by ERISA health care plan sponsors in Massachusetts violates ERISA. As such, it is "facially conclusive" that the Show Cause Order is an impermissible attempt by the Division to regulate self-funded employee benefit health plans <u>and</u> to enforce its interpretation of federal law where it lacks any power to do so.

That the Division's show Cause Order should be enjoined is mandated by *Chaulk*. In *Chaulk,* an employer brought an action seeking declaratory judgment and an injunction barring an employee's prosecution of a sex discrimination claim before the Massachusetts Commission Against Discrimination (MCAD) on the grounds that such a claim was preempted by the National Labor Relations Act (NLRA). The federal district court abstained and dismissed the employer's complaint. On appeal, the First Circuit reversed, holding that: (1) the employee's claim was preempted because it was founded upon identical facts which provided the basis for an pending administrative proceeding before the National Labor Relations Board (NLRB) and (2) the district court erred in abstaining under the *Younger* doctrine. In so holding, the First Circuit assumed that the Commonwealth of Massachusetts had a significant interest in protecting its citizens against sex discrimination. Nevertheless, the First Circuit found that because the NLRB

had exercised authority over the unfair labor practice charge and because the NLRB had primary

jurisdiction to investigate such charges, the employee's state law claims were pre-empted.

In *Chaulk*, the First Circuit reasoned that because the controversy before both the MCAD

and the NRLB was fundamentally the same, there was a significant risk for incompatible or

conflicting adjudications in an area where the federal government had the paramount interest.

As the Court explained:

> …. In order to determine the merits of [the employees] claims of sex
> discrimination, the MCAD will have to decide whether in fact [the
> employee] was engaged in protected union activity, and if so, whether she
> was engaged in the same type of union activity as the other union
> organizers.  Such a finding requires that the MCAD become embroiled in
> a factual and legal determination of what constitutes union activity, a task
> which has been expressly reserved to the jurisdiction of the NLRB.  More
> importantly, if the Commissioner were allowed to entertain [the
> employee's] claim of sexual discrimination, there is the potential risk that
> it will incorrectly apply the substantive rules governing labor
> controversies laid out by Congress in the NLRA.  It is precisely this
> potential for incompatible or conflicting adjudications that Congress ought
> to avoid by leaving these determinations in the first instance to the NLRB.

*Id.* at 1367.  Here, the Division complains that Plaintiffs conduct -- the marketing and servicing

a self-funded employee benefit plan to K.C. Precision -- involved a violation of Part 7 of ERISA

and, therefore, constitutes an unfair and deceptive act or practice in violation of Mass. Gen. Laws

ch. 176D.  However, the DOL is currently investigating the very same conduct -- the marketing

and servicing of a employee benefit plan to K.C. Precision.  Thus, as in *Chaulk*, the same facts

provide the basis for both the DOL's investigation and the Show Cause proceeding and thus

creates the same risk of inconsistent adjudications that lead the First Circuit to reverse the

District Court's abstention order in *Chaulk*.  Moreover, as in *Chaulk,* the proceedings before the

Division will center on complex issues of federal law and will require the Division, and

Massachusetts state courts in any appeal, to become embroiled in a factual and legal

determination of what constitutes an ERISA violation, a task that Congress has expressly reserved to the jurisdiction of the DOL and the federal courts.  As in *Chaulk*, there is also the potential risk that the Division, and the Massachusetts state courts on appeal from the Division's findings, will incorrectly apply the substantive rules governing ERISA laid out by Congress in ERISA, thus sowing confusion in an area where Congress expressed through an extraordinarily broad preemption provision a desire for uniformity.  This risk is particularly relevant here, because the Division and state courts generally do not ever resolve ERISA disputes.

As in *Chaulk*, the fact that the DOL is investigating Plaintiffs' conduct buttresses the conclusion that any regulatory or enforcement authority rests with the DOL, as opposed to the Division.  It also highlights the very real danger of interference with the DOL's jurisdiction over the investigation.  This is not a case where the DOL has declined to exercise its lawful jurisdiction over an ERISA-related controversy, or where the DOL's exercise of jurisdiction remains a matter of speculation.  To the contrary, the DOL has conducted numerous interviews of Plaintiffs' clients and employees and also collected information both voluntarily and by way of subpoena.  *See Complaint*, at ¶ 24.

> **B.**      ***Colonial Life* Supports Plaintiffs' Motion for Preliminary Injunction.**

The Division's suggestion that the First Circuit's recent decision in *Colonial Life & Acc. Ins. Co. v. Medley,* -- F.3d --, Lead No. 08-2332, 2009 WL 1942070 (1st Cir. 2009), bars this Court from enjoining the Show Cause proceeding is without merit. To the contrary, the rationale of *Colonial Life,* which was based on factors that demonstrably are not present in this case, actually supports Plaintiffs position that *Younger* abstention is not warranted and would be an inappropriate abdication of this Court's duty to resolve disputes properly before it.  The First Circuit's abstention ruling in *Colonial Life* turned on two critical factors. First, the case involved

an allegation of discrimination based on disabilities, an area in which both the state and federal authorities have express regulatory and enforcement authority, and as to which Congress envisioned complementary state enforcement. *Id.* at *11.  Second, the court pointed on several occasions in its opinion, including in its holding and in its Order to remand, to the need in that case to undertake a "detailed analysis, including resolving interjurisdictional differences," before the preemption issue could be decided, and concluded that when such a "detailed factual analysis" is necessary to determine the preemption issue, by definition the preemption is not "facially conclusive."  *Id.* at *5.

Neither of these factors is present here.  There is no dispute that the Division lacks *any* authority -- regulatory, enforcement or otherwise -- over ERISA or ERISA Plan sponsors or Plans.  Nor does the Division have *any* enforcement authority with respect to HIPAA's non-discrimination rules.  ERISA carefully defines the agencies of government that may enforce the statute and the persons who can bring private enforcement actions and state enforcement is glaringly and intentionally absent. 29 U.S.C. § 1134 (West 2009).  Thus, unlike *Colonial Life*, where Congress envisioned in enacting the federal statute at issue (the ADA) that the principles and policies of that statute would be supplemented by complementary state regulation, this case involves a federal statute in which the Congress expressly precluded *any* state involvement.

Similarly, unlike *Colonial Life*, where a detailed factual and legal analysis of the underlying dispute was necessary to determine whether the matter was preempted, *no* factual analysis or inquiry is necessary in this case.  There is no need here to decide the underlying HIPAA issue and the preemption decision does not turn on the resolution of that issue.  All that is necessary to determine whether the matter is preempted is to look at the Show Cause Order and see if the Division is attempting, directly or indirectly, to interpret ERISA, to decide what

the HIPAA amendments mean, to enunciate legal principles and establish policy as to when an

ERISA Plan and Sponsor violates ERISA, and to adjudicate matters involving the conduct of

ERISA Plan administrators in the implementation of ERISA Plans, i.e., to regulate ERISA Plans.

Since the enforcement action against Plaintiffs on its face has no basis in the absence of an

adjudication--a *finding*-- that the ERISA Plan Sponsor's conduct in providing promised benefits

by purchasing an individual health insurance policy for a particular employee violated ERISA,

the Division clearly *is* attempting such indirect regulation.  It is "facially conclusive" that the

Show Cause Order is preempted by ERISA and that effort should be enjoined, particularly in the

face of a pre-existing and ongoing federal investigation of the same conduct by the appropriate

federal authority.

### C.    There is No Need for Further Inquiry or Fact Finding.

The Division challenges the applicability of the "facially conclusive" exception on two

grounds.  First, the Division asserts, in a transparent but strained attempt to fit this case within

the *Colonial Life* reasoning, that "further inquiry and fact finding" is needed to establish that the

self-funded plan at issue in the Show Cause Order is in fact an ERISA plan.  Second, the

Division asserts the novel and unsupported argument that ERISA does not preempt HIPAA,

which is simply an amendment to ERISA.[14/]  These arguments simply demonstrate the

---

[14/]    The Division is playing a word game with its assertion (in an effort to suggest that *Colonial Life* is controlling) that there must be a "factual inquiry" to determine whether the K.C. Precision plan at the heart of this dispute was in fact an ERISA plan.  It is telling that the Division does not actually *allege*, either in the Show Cause Order or in its brief, that the plan in fact was not covered by ERISA.  If the Division wants to make this argument it should affirmatively take that position, something they could not possibly do consistent with Rule 11 because ERISA is clear on its face that *all* such plans are governed by ERISA.  Under the Division's logic, a plaintiff seeking abstention could assert that a "detailed factual analysis" is necessary simply by asserting in a brief "maybe the individual Plaintiffs are no longer alive" or "maybe the corporate Plaintiff is actually not a corporation with standing to sue", etc.  If the Division believes that it has grounds to make the assertion that that there is a factual question as to whether ERISA governed the plan at issue, it should actually take that position under the strictures of Rule 11 and stop playing these word games with plaintiffs and the Court.

Division's lack of understanding of the scope of ERISA and the relationship between ERISA and HIPAA.

The non-discrimination provisions contained in HIPAA are amendments to ERISA and they govern the conduct of ERISA-governed health plans. For HIPAA to apply to the plan at issue in the Show Cause Order at all, the plan *must* be governed by ERISA. And, because HIPAA amended ERISA, it is nonsensical to argue that ERISA does not preempt HIPAA, an argument that is in any event foreclosed by the express language of the statute, which expressly states that HIPAA shall not be construed to affect or modify the provisions of § 1144 of ERISA. *See* 29 U.S.C. § 1991. Moreover, wholly apart from preemption, the Division lacks any authority to interpret, regulate, or enforce either ERISA or HIPAA. The DOL, which does have jurisdiction over ERISA, is investigating the same issues raised by the Division, which itself establishes that the plan at issue is an "ERISA plan."

The Division has no good faith basis to assert that there is any question that the plan in dispute is an ERISA plan. ***All*** employer-provided health plans in the private sector are governed by ERISA. *See* 29 U.S.C. § 1003 (West 2009).[15/] Even if the law were not so clear, the Rule 12(b)(6) standard requires this Court to assume on a Motion to Dismiss that the allegations in the Complaint, including the allegation that this case involves an ERISA-governed health plan, are true. *See supra* at n. 5. In sum, no factual inquiry is necessary to determine that an ERISA plan is involved and that the Division is attempting in adjudicatory proceedings against third-parties

---

[15/]     The legal authority upon which the Attorney General relies for the proposition that "[n]ot all self-funded employee health benefit plans are subject to ERISA" is unavailing. In fact, a cursory examination reveals that neither of these cases addresses whether a private sector self-funded employee benefit plan is exempt from ERISA. *See Kentucky Ass'n of Health Plans, Inc v. Miller*, 538 U.S. 329, 336 n.1 (2003) (holding that Kentucky's "any willing provider" statutes were saved from preemption because they are laws regulating insurance); *Magner v. Associated Ins. Cos., Inc.*, No. Civ. A. 93-1932, 1995 WL 29045, at *7 (E.D. Pa. Jan. 26, 1995) (holding that the insurer's denial of health insurance benefits did not violate Pennsylvania insurance laws).

to establish precedent and regulate the conduct of ERISA plan sponsors in blatant disregard of ERISA's preemption provisions. As in *Chaulk*, that effort should be enjoined by this Court, particularly in light of the ongoing investigation of the same issues by the appropriate federal authority.

**VI**.     **CONCLUSION**

This case involves a state agency's attempt to establish rules that regulate the actions of health plan sponsors governed by ERISA. It is "facially conclusive" that such efforts are preempted. This case is controlled by the First Circuit's *Chaulk* decision and is easily distinguished from *Colonial Life*. For the reasons argued in Plaintiffs' Motion and Memoranda of Law, the Court should DENY the Division's motion to dismiss and GRANT Plaintiffs' motion to enjoin the Division's Show Cause proceeding.

 Respectfully Submitted,

MARK ALLAN CELENTANO, HMA MGU, LLC,
NEW ENGLAND CUSTOM HEALTH PLAN
ADMINISTRATORS, LLC, AND JEDEDIAH L.
BRETTSCHNEIDER,
By their attorneys,

/s/ Nancy D. Adams_____
Joseph G. Blute (BBO#047300)
jblute@mintz.com
Nancy D. Adams (BBO#560970)
nadams@mintz.com
Mintz Levin Cohn Ferris Glovsky
 And Popeo, PC
One Financial Center
Boston, MA  02111
(617) 542-6000

Dated: July 31, 2009

## <u>CERTIFICATE OF SERVICE</u>

I, Nancy D. Adams, hereby certify that this 31st day of July, I caused a copy of the foregoing Plaintiff's **Opposition to the Defendant's Motion to Dismiss** to be served on the following counsel for Nonnie Burnes, in her official capacity as Commissioner of the Massachusetts Division of Insurance and Martha Coakley, Attorney General of Massachusetts, via the Court's ECF system:

Kenneth W. Salinger
Assistant Attorney General,
Administrative Law Division
One Ashburton Place
Boston, MA 02108
Ken.salinger@state.ma.us


/s/ Nancy D. Adams_____
Nancy D. Adams


4680637v.3